**In re Andrew YOUNG and Tietje Young, Debtors.**

**No. 91–01981.**

United States Bankruptcy Court, W.D. Washington, at Seattle.

May 22, 1991.

Keith A. Bode, Lyden, Wash., for Ferndale Grain.

Hwa–Tsun Feng, Seattle–First Nat. Bank, Law Dept., Seattle, Wash., for Seattle–First Nat. Bank.

Richard Kimberly, Bellingham, Wash., for debtors.

## MEMORANDUM OPINION

SAMUEL J. STEINER, Chief Judge.

The issue in this case is whether Ferndale Grain, a creditor who supplied the debtors with feed for their cattle, has a valid preparer lien pursuant to RCW 60.13.-030 et seq.

### FACTS

The debtors, dairy farmers, filed this chapter 11 case on March 18, 1991. On the date of filing, the debtors owed Seattle–First National Bank, which financed their operation, the sum of $307,000. The obligation is evidenced by a promissory note validly secured by the debtors' livestock, equipment, fixtures, and accounts receivable, as well as the proceeds of collateral.

After filing, the debtors reached an agreement with the bank as to the use of cash collateral. Ferndale Grain objected to the use of cash collateral on the basis that it had filed two statutory preparer liens which have priority over the bank as to the debtors' grain and accounts receivable. The bank concedes that pursuant to RCW 60.13.030, a properly perfected preparer lien has priority over the bank's security interest. However, the bank contends that Ferndale Grain does not qualify under the statute for such a lien.

Actually, Ferndale Grain acquires unprocessed grain either from a grower (a farmer) or from a broker or grain elevator. It then manufactures the grain into feed, which it sells and delivers to farmers, such as the debtors in this case, who use it to feed their cattle.

## DISCUSSION

■ RCW 60.13.030 provides in relevant part as follows:

> Starting on the date a *producer* delivers grain ... to a *preparer*, the *producer* has a first priority statutory lien, referred to as a "preparer lien." ... The preparer lien attaches to the agricultural *products delivered by the producer to the preparer, and to the preparer's accounts receivable.*

(Emphasis supplied.) Inasmuch as the lien is available only to producers, the question is whether Ferndale Grain is a producer as defined by the statute.

Pursuant to RCW 60.13.010(1) and RCW 20.01.010, a "producer" is defined as a "person engaged in the business of growing or producing any agricultural product...." An "agricultural product" is defined as "any *unprocessed* horticultural, ... grain, ... or other agricultural products...." RCW 20.01.010.(3) (emphasis supplied), RCW 60.13.010(1).

The Court concludes that inasmuch as Ferndale Grain sold processed grain rather than unprocessed grain to the debtors, it is not a "producer" for purposes of the lien statute and is therefore not entitled to a preparer lien.

The Court's conclusion is buttressed by the statutory scheme. RCW ch. 60.13 provides for two types of liens in favor of producers. One is a "preparer lien" as claimed by Ferndale Grain in this case, and the other is a "processor lien". The preparer lien runs in favor of a producer of grain against a "preparer", which is defined in RCW 60.13.010(2) as "a person engaged in the business of feeding livestock or preparing livestock products for market." The second type of lien is the "processor lien", which runs in favor of a producer of agricultural product against a "processor", defined in RCW 20.01.010(14) as "any person, firm, company, or other organization that purchases agricultural crops ... and that ... presses, powders, or otherwise processes those crops in any manner whatsoever for eventual resale." All of the lien rights described in RCW ch. 60.13 run in favor of the producer/grower. No provision has been made for a lien in favor of a processor, middle person or other distant purchaser.

The Court's conclusion is also supported by legislative history. The first provision for processor and preparer liens was made in 1983, with the amendment of Washington State's Warehouse Act. In February, 1983, the Attorney General for the State of Washington reviewed the proposed legislation in a memorandum directed to the Director of the Department of Agriculture. The memorandum indicated that the amendments were made as a result of grain warehouse bankruptcies. In each of these cases, Washington producers had substantial claims for grain delivered to warehouses, all of which were given general unsecured status. The Attorney General expressed the concern of the legislature as follows:

> Because their commodity often represents their income for the entire year, the loss incurred to the producers is substantial. Additionally, the producer is obligated to repay his production lender even though he has not received payment from the sale of his commodity.

In the summary of proposed legislation submitted by the House Committee on Agriculture, the arguments in favor of the bill include the following statement:

> Growers are the producers of the original wealth used by others, yet their crops are used as collateral by others and lost to growers in bankruptcies.

After the legislation was passed, the Committee on Agriculture issued a synopsis which describes the liens as follows:

> Liens are created which give the *producers or depositors* of agricultural commodities certain rights in the commodities when they engage in transactions for the storage, processing or conditioning of their commodities. These *liens apply to commodities delivered or sold to warehousemen, grain dealers, certain processors, and preparers of livestock and livestock products.*

(Emphasis added.)

In each of the foregoing descriptions or summaries of the legislation, it is clear that

the purpose of the legislation was to protect growers, not subsequent dealers, agents, consignors, processors, or other interim or ultimate transferees.

In another case pending before this Court, Ferndale Grain has acknowledged that the definition of "producer" is limited by RCW 20.01.010 to one who actually grows an agricultural product, and that it did not actually grow the grain delivered to the debtor. Nevertheless Ferndale Grain argues that in the dairy farming context, the term "producer" should be construed to include grain/feed suppliers. The basis for the argument is twofold.

First, RCW ch. 60.13 was amended in 1986 by the addition of RCW 60.13.035, which provides that one who owes money to a "preparer of dairy products" (i.e. dairy farmer) need not pay a producer (grower) on the producer's preparer lien until it receives written notice of the lien. Ferndale Grain contends that this amendment confirms that dairy farmers are in fact "preparers" for purposes of RCW ch. 60.13. (Prior to the amendment, it had appeared by the definition of "preparer" that preparer liens were limited to feedlots, beef cattle, and slaughterhouses.)

Second, Ferndale Grain asserts that it knows of no grower in Western Washington who delivers grain directly to a dairy farmer. Rather, dairy farmers purchase their grain from suppliers such as Ferndale Grain, which render the grain suitable for dairy cattle feed. As such, the term "producer" as defined in RCW 60.13.010(1) and RCW 20.01.010(4) is meaningless within the context of the dairy industry. Further, a strict construction would render meaningless the provisions of RCW 60.13.035, which deal specifically with grain delivered to dairy farmers. Finally, RCW 60.13.010 provides: "As used in this chapter, the terms defined in this section have the meanings indicated *unless the context clearly requires otherwise....*" RCW 60.-13.010 (emphasis supplied).

■ There is no reason to question Ferndale Grain's characterization of industry

practices. However, while the statute may address a situation that does not exist in practice, this is not a basis to extend judicially the availability of the lien to a class of creditors which is not already covered.

This legislation is relatively new. The history leaves little doubt that growers were its intended beneficiaries. In 1987, the statute was amended to make processor liens available to commercial fishermen. Thus at this time, the liens protect two industries which risk losing all or substantial amounts of their annual income if the depositories of their product file for bankruptcy before they are paid. If feed suppliers are in need of the same protection, they should approach the state legislature, not the Bankruptcy Court.

## CONCLUSION

1. Ferndale Grain does not qualify for a preparer's lien under the above cited statutes.

2. Pursuant to Rule 51(a) of the Federal Rules of Civil Procedure, this opinion shall suffice for whatever Findings of Fact and Conclusions of Law that may be necessary.

3. Counsel for Seattle–First National Bank will present an appropriate order.